05M-1003-JGD

## AFFIDAVIT OF SPECIAL AGENT PETER DARLING

1. I am a Special Agent with U.S. Immigration and
Customs Enforcement [ICE], and I have been employed with
ICE or its predecessor agency, the United States Customs
Service, since November 1998.  Prior to my assignment in
Boston, I was assigned to the Chicago O'Hare International
Airport, on a federal narcotics task force.  I am currently
assigned to the Drug Smuggling Group in Boston.

2. I have spoken with agents involved in the
investigation that resulted in the arrest of Arcenio Poche-
Chacon ["Poche"] by ICE, and this affidavit includes
information known to them as well as my own personal
knowledge.  While this affidavit does not contain every
fact known to law enforcement agents about this
investigation, it does contain facts giving rise to
probable cause to believe that POCHE knowingly and
intentionally imported heroin into the United States from a
place outside thereof, to wit: the Dominican Republic, in
violation of 21 U.S.C. §952(a) and § 960(a).

3. On January 31, 2005, Arcenio POCHE-Chacon arrived at
Boston Logan Airport from Santo Domingo, Dominican
Republic, onboard American Airlines (AA) flight 2084.

4. Customs Inspectors noted that POCHE, a resident alien, had extensive short trips to the U.S. with extended periods of time outside the U.S.  Inspectors noted that POCHE had purchased his plane ticket through a travel agency in the Dominican Republic known to Inspectors as linked to drug couriers.

5. Customs and Border Patrol [CBP] Inspectors conducted the secondary inspection in Spanish.  During the inspection, POCHE stated to Inspectors that he departed Boston for the Dominican Republic on or about January 2, 2005 and he went to visit a sick nephew.  POCHE listed his U.S. address as "30 Hervoll, Hervoll, MA" on his Customs declaration.  POCHE stated that he lives with his sister-in-law and her husband at 30 Victor Street, Haverhill, MA. POCHE stated that he is currently unemployed and last worked in November 2004 at a convenience store in Haverhill, MA.

6. POCHE stated that he purchased a one-way ticket from Boston to the Dominican Republic.  POCHE stated that a one-way ticket was cheaper than a round-trip ticket.  POCHE stated that he then purchased a round-trip ticket in the Dominican Republic to return to Boston because it was cheaper than a one-way ticket.  Inspectors questioned POCHE regarding why he did not initially purchase a round-trip

2

ticket to which he replied a one-way ticket was cheaper. POCHE was unable to explain the apparent discrepancy in his story.  POCHE indicated that he did not intend to use the return portion of his ticket that listed a return back to the Dominican Republic on February 5, 2005.  POCHE claimed that he paid for his own ticket.

7. During the interview, inspectors noted signs that POCHE was an internal carrier of narcotics, including dry mouth, lethargy and rigid stance.  Specifically, inspectors noted that POCHE frequently attempted to swallow; that he was lethargic and sleepy; and he remained seated in the same position, leaned back with his legs slightly open, with no fidgeting or shifting to adjust his stance.  Based on my training and experience, these are physical indicators of an internal carrier.

8. Inspectors asked POCHE if he was smuggling drugs. POCHE repeatedly stated that he had nothing and lifted his shirt up to expose his stomach.  Inspectors asked POCHE whether he would agree to be X-rayed, and presented POCHE with an X-Ray consent form, which he signed.  Prior to transport to Whidden Hospital for an X-ray examination, Inspectors performed a patdown of POCHE.  Inspectors noted that POCHE's stomach was hard and extended, which is indicative of an internal drug carrier.

9. Inspectors transported POCHE to Whidden Hospital in Everett, MA.  An X-ray was administered and was subsequently read as positive for the presence of foreign bodies.

10.  Whidden personnel requested a urine sample from POCHE.  POCHE provided a urine sample and passed nineteen pellets containing a powdered substance that field-tested positive for heroin.  One pellet was weighed and registered 12 grams.

11.  Immigration and Customs Enforcement (ICE) Agents Eric Laforte and Kristin Rosenbeck were present at Whidden Hospital.  Special Agent [SA] Rosenbeck advised POCHE that he was under arrest.  SA Rosenbeck read the Miranda warning in Spanish to POCHE.  POCHE stated that he understood the Miranda warning and indicated that he wanted to answer questions verbally and in writing by signing the Miranda waiver form, as witnessed by SA Laforte.

12.  During the interview, POCHE stated that he had ingested ninety (90) pellets of heroin and was being paid $9,000 for the smuggling of the heroin.  POCHE stated that he received the drugs from an unidentified male subject in Santo Domingo during the prior weekend.  He stated that the unidentified male also gave him the airline ticket.

4

13.  POCHE stated that he took the drugs to his house
in Santo Domingo.  There, he took two to three hours to
ingest the 90 pellets of heroin.  He stated that he used
water to aid in ingesting the pellets.

14.  POCHE stated that he actually lives in Santo
Domingo, not in Haverhill, MA, as previously stated to CBP
Inspectors.  He stated that he works at a bakery where he
earns between 300 and 400 pesos a day.  He stated that he
has nine children and is expecting another child.

15.  POCHE stated that he decided to smuggle the
heroin for $9,000 because he needed the money.  POCHE
stated that after entering the United States, he was
expected to go to pass the heroin, and that once he had
passed it, he would be paid the $9,000 and would then
return to the Dominican Republic.

16.  As of approximately 10:15 a.m. today, more than
80 pellets of heroin had been recovered from POCHE, and
more are expected.  The pellets are reasonably uniform,
each having similar in size and weight.

17.  Based on the foregoing, and my own experience in
narcotics investigations, I submit that there is probable
cause to believe that, on January 31, 2005, in Boston,
Suffolk County, in the District of Massachusetts, POCHE
knowingly and intentionally imported into the United States

5

from a place outside thereof, to wit: the Dominican

Republic, heroin, a Schedule I controlled substance, in

violation of Title 21, United States Code, Sections 952(a)

and 960(a).

Peter Darling
Special Agent
Immigration and Customs Enforcement


    Sworn to and subscribed before me this 1st day of
February 2005.

JUDITH G. DEIN
United States Magistrate Judge
District of Massachusetts

6